# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

|  |  |  |
|---|---|---|
| JEREMY ORR et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:10-cv-04019-FJG |
| | ) | |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Defendant Adam Brannin's Motion for Summary Judgment (Doc. No. 100), and Defendant Luann Leighton's Motion for Summary Judgment (Doc. No. 102).

**I.  BACKGROUND[1]**

Pro se Plaintiffs Jeremy Orr, Ray D. Wolfe and Bo Lane filed this cause of action arising from a traffic stop that occurred on January 23, 2010.  Officer Brannin stopped a Black 1992 Honda Civic, driven by Plaintiff Jeremy Orr, for improper display of state plates.  The license plate number on the Honda Civic checked to another vehicle, a 2000 Ford Truck.  Officer Brannin requested Orr's driver's license and insurance information and Orr provided a non-driver's license identification card issued by the state of Missouri.  Orr told Brannin that he did not have insurance on the vehicle because he had recently purchased the vehicle.  Officer Brannin requested and

---

[1] In accordance with Local Rule 56.1(a), "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." See Ruby v. Springfield R-12 Public School Dist., 76 F.3d 909, 911 n. 6 (8th Cir. 1996).  Accordingly, all facts set forth herein are taken from Brannin's Motion for Summary Judgment (Doc. No. 100), unless otherwise indicated.

obtained identification from the passenger, Plaintiff Bo Lane, over Orr's objection that it was illegal for Brannin to ask for a passenger's identification (Doc. No. 1 at ¶ 22).

After Brannin processed the identification cards, he discovered Orr and Lane's licenses were suspended, and obtained confirmation from his dispatch. Officer Brannin requested backup and Officer Shawn Dodson arrived on the scene. The officers approached the vehicle and asked Orr and Lane to step outside (Doc. No. 1 at ¶ 24). Orr was talking on a cell phone at the time, and told Brannin he was talking to his attorney. After Brannin's repeated requests, Orr exited the vehicle and Brannin handcuffed Orr behind the back, double-locked, allowing space for a finger to fit between the handcuffs and Orr's wrists. Brannin informed Orr he was under arrest for driving with a suspended license and without auto insurance. Plaintiff Orr told Officer Brannin that he would lose his job for this and that Orr would be suing Brannin in court.

The officers did not permit Lane to drive the vehicle because of his suspended Missouri driver's license. Orr demanded that his car be privately towed by Plaintiff Wolfe, who is a tow truck operator. Instead, Brannin contacted a different tow service to pick up the vehicle. Brannin completed the necessary tow form and conducted an inventory search of the vehicle. Brannin noted the front bumper was damaged, and recorded the vehicle's condition on the tow form. Orr claims the bumper and radiator support bracket were damaged while the vehicle was towed (Doc. No. 1 at ¶35). Officers Brannin and Dodson also discovered the VIN on the dash of the Honda Civic did not match the VIN on the car's door.

Officer Dodson transported Orr to the Joplin City Jail, where Orr was charged with Driving While Suspended and No Proof of Financial Responsibility. Defendant

Luann Leighton is a jailer at the Joplin City Jail. When Leighton arrived on duty, Orr was being held in Tank A, a holding cell, due to his unruly conduct which included ranting, raving, cursing and pounding on the door (Doc. No. 102 at ¶ 3). While at the jail, Orr did not alert the officers to any medical condition or other injuries, but complained his wrists were sore from the handcuffs. Orr claims he requested pictures of his wrists because Officer Brannin had put the hand cuffs on so tight that the cuffs bit in and bruised Orr's wrists and pinched a nerve (Doc. No. 1 at ¶ 44). Leighton states she examined Orr's wrists and found no red marks, swelling, or cuts on his wrists, and that Orr was able to squeeze his hands without a problem (Doc. No. 102 at ¶ 10). Orr alleges he requested that Defendant Leighton call Orr's mother to have her bring his medicine for a heart condition but Leighton refused because Orr could not prove he was on medication (Doc. No. 111 at ¶ 1). Leighton denies that Orr alerted her to any injury or medical condition, and as none was apparent, no further action was required on her part (Doc. No. 102 at ¶ 11).

## II. LEGAL STANDARD

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the disputes must be outcome determinative under prevailing law." Id. (citations omitted).

## III. DISCUSSION

Plaintiffs allege the following causes of action against both Defendants: (I) Deprivation of Constitutional Rights and Privileges under 42 U.S.C. §§ 1983, 1985, and 1986; (II) Conspiracy to Deprive Persons of Equal Protection of the Law under 42 U.S.C. § 1985; (III) Intentional Infliction of Emotional Distress; (IV) Defamation; (V) Failure to Provide Adequate Medical Care.

### A. Count I: Deprivation of Constitutional Rights and Privileges Under 42 U.S.C. §§ 1983, 1985, and 1986.

To state a claim under 42 U.S.C. § 1983, "a complaint must allege deprivation of a right, privilege or immunity secured by the constitution and laws of the United States through the conduct of persons acting under color of state law." *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986). Plaintiffs allege officer Brannin unlawfully detained Orr and his vehicle without probable cause, and officer Leighton detained Orr in jail against his will. Plaintiffs thus allege a deprivation of Orr's liberty interest.

The equal protection clause "prohibits government officials from selectively applying the law in a discriminatory way." *Central Airlines, Inc. v. United States,* 138 F.3d 33, 334-35 (8th Cir. 1998) (citation omitted). "It protects 'fundamental rights,' 'suspect classifications,' and 'arbitrary and irrational state action.'" *Brandt v. Davis,* 191 F.3d 887, 893 (8th Cir. 1999). Where there is no suspect classification or fundamental right at stake, the court's review is under the deferential rational basis standard. *Batra v. Board of Regents of the Univ. of Neb.,* 79 F.3d 717, 721 (8th Cir. 1996). In the Eighth Circuit, the key requirement to plead a violation under the equal protection clause is that "plaintiff allege and prove unlawful, purposeful discrimination." *Id.* at 722.

Plaintiffs have not asserted they belong to a suspect class, but seek protection from the officers' purported arbitrary and irrational conduct that restrained Orr's liberty. Here, officer Brannin pulled over Orr's vehicle for improper display of state license plates because the plate number on Orr's Honda Civic was registered to another vehicle. A police officer, "who sees a traffic violation has probable cause to stop the vehicle and conduct a reasonable investigation." *United States v. Williams,* 431 F.3d 296, 298 (8th Cir. 2005). Thus, having personally observed a violation, officer Brannin had probable cause to stop Orr's vehicle and conduct a reasonable investigation.

Contrary to Plaintiff Orr's allegations, Brannin also had authority to request identification from passenger Lane. *See U.S. v. Cloud,* 594 F.3d 1042 (8th Cir. 2010) ("After a lawful traffic stop, an officer may complete routine tasks, which may include asking a passenger for identification and running a computer check if the passenger consents to the request for identification."). Finding that Orr was driving on a suspended license and without insurance, officer Brannin had lawful grounds on which

to arrest Orr. Based on the facts alleged, Plaintiffs have failed to show Brannin's actions had any discriminatory intent, or were unconstitutional in any way.

As to Defendant Leighton, the Court finds no evidence suggesting Leighton's actions deprived Orr of his constitutional rights and privileges, much less derived from discriminatory intent. Orr complains Leighton refused to photograph Orr's wrists, that she denied Orr's request to call his mother for medication, and that during his incarceration Orr was provided meals that were unfit for human consumption.

Leighton explained that following customary procedure, Orr was placed in a holding cell due to his disorderly conduct, for his own safety and the safety of the jailers. Leighton examined Orr's wrists and found no redness or bruising, thus, requiring no further action. Leighton stated that Orr did not alert the officers or jailers to any injury or medical condition that required immediate attention. Finally, Leighton recalls serving Orr an evening meal. Evening meals at the jail consist of, for example, a sandwich, chips, cookies, a fruit cup, applesauce or pudding, and iced tea or juice. Orr has not produced any evidence that Leighton treated him differently than other inmates, or that the treatment rose to the level of a constitutional deprivation of his rights.

Plaintiffs' claim under section 1985 conspiracy to interfere with civil rights is discussed in the next section. A cause of action under section 1986, which provides for a private right of action for neglect to prevent a conspiracy under section 1985, is also discussed in the next section.

### B. Count II: Claim Under 42 U.S.C. § 1985(3)

Plaintiffs claim Defendants Brannin and Leighton conspired with others to deprive Orr of his liberty. Section 1985(3) protects against a conspiracy to interfere with civil rights. To show a civil rights conspiracy under 42 U.S.C. § 1985(3), the Plaintiffs must prove: (1) the defendants conspired, (2) with the intent to deprive them, either directly or indirectly, of equal protection of the laws, or equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) that they or their property were injured, or they were deprived of exercising any right or privilege of a citizen of the United States. *See Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996). In order to prove a private conspiracy in violation of section 1985(3), a plaintiff must show proof of racial or class-based invidious discriminatory intent aimed at interfering with rights that are protected against private and official encroachment. *See Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267-68 (1993).

Plaintiffs allege Defendant Brannin "worked in concert with other defendants to deny plaintiff's [sic] of their rights under the United States Constitution" (Doc. No. 109). In addition, Plaintiffs contend Brannin's refusal to allow Plaintiff Wolfe to tow Orr's vehicle furthered the conspiracy and deprived Wolfe of his right to operate his business. As to Defendant Leighton, Plaintiffs claim Leighton "conspired with officer Brannin, Dodson, and others unknown to plaintiff to keep him unlawfully incarcerated against his will . . . ." (Doc. No. 111). Yet, Plaintiffs have not supported these allegations with any evidence of a conspiracy, much less a showing of invidious discriminatory intent. A lawful stop and arrest, and the towing of Orr's vehicle consistent with the process set forth in the Joplin Police Department Standard Operating Guidelines, is not a

conspiracy.  Further, there is no evidence that Orr was incarcerated longer than necessary or that the defendants violated his due process rights.

Plaintiffs have not produced evidence of an agreement between Defendants aimed at depriving Plaintiffs of their rights or privileges.  There being no genuine issue of fact, Defendants are entitled to judgment as a matter of law on Plaintiffs' conspiracy claim under section 1985(3).  Because Plaintiffs' section 1985(3) claim fails, their section 1985 and 1986 claims for damages also fail.  *See Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981) (cause of action under § 1986 is dependent on valid claim under § 1985).

### C.  Count III: Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm.  *K.G. v. R.T.R.,* 918 S.W. 2d 795, 799 (Mo. banc. 1996).  The conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Warren v. Parrish*, 436 S.W.2d 670, 673 (Mo. 1969).

Plaintiffs have not made specific allegations against either defendant in support of this claim.  The uncontroverted facts demonstrate Brannin lawfully stopped Orr and Lane for a traffic violation and followed standard operating procedure when handcuffing Orr.  Plaintiffs point to no extreme or outrageous conduct.  As to Defendant Leighton, the facts demonstrate she acted consistent with proper procedure when addressing Orr's needs during his incarceration.  The uncontroverted facts show there was no

extreme and outrageous conduct by Defendants Brannin or Leighton that would rise to the level of intentional infliction of emotional distress under Missouri law.

### D. Count IV: Defamation

The elements of defamation under Missouri law are: (1) publication, (2) of a defamatory statement, (3) that identifies the plaintiff, (4) that is false, (5) that is published with the requisite degree of fault, and (6) damages the plaintiff's reputation. *Overcast v. Billings Mutual Ins. Co.*, 11 S.W. 3d 62. 70 (Mo. 2000). Plaintiffs failed to identify any defamatory statements attributable to Defendants Brannin or Leighton, nor asserted that either defendant published a defamatory statement. Defendants are entitled to judgment as a matter of law since Plaintiffs have not satisfied the elements of defamation under Missouri law.

### E. Count V: Failure to Provide Adequate Medical Care

Plaintiffs allege Orr was denied adequate medical care while incarcerated at the Joplin City Jail. A jailer who is deliberately indifferent to an inmate's medical needs is subject to suit under section 1983. *McRaven v. Sanders,* 577 F.3d 974, 979 (8th Cir. 2009). To establish deliberate indifference, Plaintiffs must show Orr had objectively serious medical needs and that the jailers actually knew of those needs but deliberately disregarded them. *Id.*

Plaintiffs argue Defendants Brannin and Leighton denied Orr medication for his heart condition, and this was a violation of the Eighth and Fourteenth amendments. Plaintiffs assert that failure to provide diagnostic care and medical treatment known to be necessary is deliberate indifference. Despite their allegations, however, Plaintiffs have provided no evidence to show Orr suffered from any medical condition. Defendant

9

Brannin stated in his Affidavit that Orr did not voice any complaints about any medical condition. Defendant Leighton states that if Orr had made any complaint of actual injury, it would have been immediately addressed but that Orr did not complain of any injuries to her, other than his wrists were sore from the handcuffs. Viewing the evidence in the light most favorable to Plaintiffs, the Court cannot identify an issue of fact. Plaintiffs have offered no support for their claim that Orr had objectively serious needs and that either Brannin or Leighton actually knew of those needs but deliberately disregarded them.

Further, state actors may be entitled to qualified immunity in a section1983 action. *Id.* "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citing *Riehm v. Engelking*, 538 F.3d 952, 962 (8th Cir.)). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of deprivation." *Id.* (citing *Howard v. Kansas City Police Dep't.*, 570 F.3d 984, 988 (8th Cir. 2009)). Here, the evidence does not suggest either defendant subjected Orr to cruel and unusual punishment, or deprived him of any other constitutional or statutory right. Accordingly, both defendants are entitled to qualified immunity.

## VI. CONCLUSION

A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). Here, Plaintiffs have offered no evidentiary

support for their allegations against Defendant Brannin and Defendant Leighton. Based on the foregoing, Defendant Brannin's Motion for Summary Judgment (Doc. No. 100) is hereby **GRANTED**, and Defendant Leighton's Motion for Summary Judgment (Doc. No. 102) is hereby **GRANTED**.

**IT IS SO ORDERED.**

Date:   01/26/11                    **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri               Fernando J. Gaitan, Jr.
                                                       Chief United States District Judge